IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

MAY 20 2013

J T NOBLIN  CLERK
BY_____DEPUTY

**CELLULAR SOUTH, INC. d/b/a C SPIRE WIRELESS**                                    **PLAINTIFF**

**VS.**                                                        CAUSE NO. _3:13CV308 TSL-JMR_

**DIGITAS, INC.**
**and VNC COMMUNICATIONS,**
**INC., d/b/a PHONEVALLEY**                                                **DEFENDANT**

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Cellular South, Inc., doing business as C Spire Wireless submits this Complaint for Declaratory Judgment and Other Relief against Digitas, Inc. and VNC Communications, Inc., doing business as Phonevalley as follows:

### PARTIES

1.      Cellular South, Inc., doing business as C Spire Wireless ("C Spire") is a Mississippi corporation with its principal place of business in Ridgeland, Mississippi.

2.      Digitas, Inc. is a Massachusetts corporation with its principal place of business located at 33 Arch Street, Boston, MA 02110.

3.      VNC Communications, Inc., doing business as Phonevalley is a Delaware corporation with its principal place of business located at 180 North LaSalle Street, Suite 1100, Chicago, IL 60601.

### JURISDICTION, VENUE AND COMMERCE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332, because the parties are citizens of different States, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

1

5.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (c)(2) because a substantial part of the events or omissions giving rise to the claim occurred, and is occurring in this District, and the defendants reside in this District.

## FACTUAL BACKGROUND

6.     C Spire is a Mississippi corporation and a privately held wireless carrier.  C Spire currently serves customers throughout Mississippi, and in portions of Tennessee, Alabama, and Florida.  C Spire's advertising agency of record, Spark, introduced C Spire to Phonevalley. Both Spark and Phonevalley are part of a worldwide media relations and advertising conglomerate known as Publicis Groupe ("Publicis").   Publicis holds itself out as the third largest communications group in the world.  Agencies that are part of Publicis include Digitas, Razorfish, Rosetta, VivaKi, BBH, Leo Burnett, Publicis Worldwide, Saatchi & Saatchi, StarcomMediaVest Group and ZenithOptimedia.  *See* Publicis Annual Report, p. 12, available at http://www.publicisgroupe.com/documents/instant-report-2012-en.pdf (last viewed on May 10, 2013).

7.     At the time of its discussions with Phonevalley, C Spire did not have any material amount of third party advertising revenue or a platform for obtaining such advertising revenue in place.  Acting with this knowledge, Phonevalley told C Spire that it would develop and implement a strategy for C Spire to obtain such advertising revenue.  Phonevalley further told C Spire that it would develop and implement a new "platform" designed to deliver such advertising through various channels such as C Spire's website and internet-related services, as well as through direct communications through email and text messages to C Spire customers.

8.     Phonevalley also represented to C Spire that Phonevalley had access to and the ability to sell advertising on the new proposed platform to other Publicis clients.  Such clients

included those of Publicis's affiliate, Digitas. Publicis describes Digitas in its annual report as follows: "Digitas is a digitally-led agency that partners with the world's most admired brands, including American Express, eBay, General Motors, Intel, Nissan, Panasonic, P&G, Sprint, and Whirlpool. One promise governs our company, inspires our people and delights our clients: Do *Great* Work. Do it *Everyday*." [Emphasis in original.]

9.     C Spire was willing to engage Phonevalley to perform the services promised only on the condition that Phonevalley would be able to deliver enough revenue from the platform initially for C Spire to recoup its initial costs. At all relevant times, Phonevalley was aware of C Spire's condition for engaging Phonevalley to do such work. Acting with such knowledge, on multiple occasions, Phonevalley representatives, Sanjay Pothen and Garrick Gauch, told C Spire's representatives, including C Spire's Director of Brand Marketing and Growth Strategy, Lisa Flynt, C Spire's Chief Operating Officer, Kevin Hankins, C Spire's Senior Vice President of Brand and Personalization, Suzy Hays, C Spire's Manager of Brand Platforms and Analytics, Justin Croft, and C Spire's Vice President of Finance, Brian Jones, that because of its relationships with advertisers through Spark and the Publicis network, including Digitas, Phonevalley would deliver to C Spire the first group of advertisers who would generate $500,000 in revenue for C Spire. This would allow C Spire to recoup its initial investment in the consulting services and platform to be provided by Phonevalley.

10.     C Spire relied upon the representations made by Phonevalley about its ability to deliver $500,000 in advertising revenue because of Phonevalley's membership in the Publicis Groupe, its relationship with Digitas and Spark and the publicly known extensive client list of such entities.

11.   At the time Phonevalley made such representations to C Spire, Phonevalley was aware of the geographic location of C Spire's service territory, the nature of its business and its size.  Even with this awareness, Phonevalley was adamant about its confidence in the business model for generating third party advertising revenue, so much so that it was able to commit to deliver $500,000 in initial advertising revenue.

12.   Additionally, Phonevalley was also well aware of these facts about C Spire because Phonevalley's representative, Sanjay Pothen, had been a part of the Spark team that serviced C Spire on a regular basis. As its advertising agency of record, the Spark team, including Pothen, was well aware of the geographic location of C Spire's service territory, the nature of its business and its size at the time Phonevalley made its representations to C Spire.

13.   Based on Phonevalley's representations about its capability to deliver $500,000 in advertising revenue in order to allow C Spire to recoup its initial investment in Phonevalley's services and the platform, C Spire entered into a Statement of Work with Phonevalley, dated May 30, 2012 ("Statement of Work") (Ex. A).

14.   C Spire would not have entered into the Statement of Work but for Phonevalley's promise to deliver $500,000 in advertising revenue.

15.   The Statement of Work provided that the project would consist of three (3) phases with payments due from C Spire, as follows:

| PHASE & TITLE | DELIVERABLE | PRICE |
|---|---|---|
| 1A – Mobile Advertising Plan Development – 4 weeks | Mobile asset analysis, subscriber analysis, mobile format recommendation, and ad revenue and inventory projections | |
| 1B – Mobile Advertising Infrastructure Analysis – 4 weeks | Technology infrastructure deployment, third party technology analysis, mobile | $200,000 (total for Phases 1A & 1B) |

| | advertising recommendation, and financial models | |
|---|---|---|
| 2 – Mobile Advertising Soft Launch via Program Management Office – 8-12 weeks | Technology infrastructure deployment, beta test execution and case studies and media kit | $200,000 - $300,000 (to be finalized at the end of Phase 1) |
| **3 – Revenue Generation – 12 weeks** | **Revenue**, campaign execution, campaign post mortems | **20% of Advertising Revenue generated** |

16.    The Statement of Work further specified that all payments would be made to Phonevalley, Attention: Jon Taylor, c/o Digitas- 19th Floor, 33 Arch Street, Boston, MA 02110.

17.    Phonevalley completed Phases 1A and 1B of the Statement of Work, and C Spire paid Phonevalley $200,000 per the Statement of Work.  Subsequently eight (8) of the twelve (12) weeks' of work set forth in Phase 2 were completed, and C Spire paid Phonevalley $200,000 for such work.

18.    Following substantial completion of Phases 1 and 2 of the Statement of Work, on September 19, 2012, Phonevalley representative Ash Dyer provided C Spire with a financial model representing Phonevalley's commitment to deliver $500,000 in ad revenue consistent with its previous representations.

19.    In late 2011, Pothen informed C Spire that Phonevalley was being taken over by Digitas.  Further, Pothen informed C Spire that as a result of the takeover, Phonevalley executives were now unwilling to perform under Phase 3 of the Statement of Work on a strictly revenue-share basis and that they wanted a fee to undertake and complete Phase 3. Further, Digitas insisted on an amendment of the Statement of Work in order to move forward with Phase 3.

20.    Digitas also conditioned its performance under Phase 3 of the project upon the addition of a "best efforts" qualifier to the obligation for Defendants to deliver $500,000 in advertising revenue.  Such language was added to the Statement of Work in an amendment, dated December 21, 2013 ("Amended Statement of Work") (Ex. B) at the behest of Digitas.

21.    Among other things, Defendants agreed in the Amended Statement of Work to complete Phase 3 titled "Revenue Generation," including the obligations:

- "Create awareness of C Spire's mobile advertising solution to the relevant advertising community as previously identified in Phase 2 via Publicis network" Amended Statement of Work at p.2;

- "Partner with the C Spire team to help secure first group of paying advertisers and recoup C Spire's initial investment in the mobile advertising opportunity" (Amended Statement of Work at p. 2);

- "'Best efforts' goal to secure a target of $500,000 in media spend" (Media spend as stated in the Agreement refers to advertising revenues placed by Defendants for and on behalf of C Spire's benefit) (Amended Statement of Work at p. 2); and

- "Execute advertising programs in partnership with C Spire team including managing advertiser relationships, campaign operations, and internal communications within C Spire" (Amended Statement of Work at p. 3).

- "Note Phonevalleye[*sic*]/Digitas will reassess progress 12 weeks from date of Phase 3 commencement… ."

22.    The Phase 3 Deliverables were stated in the Amended Statement of Work as follows:  "Revenue, campaign execution, campaign post mortems" (Amended Statement of

Work at p. 3).  The timing of Phase 3 is specified in the Statement of Work to last for twelve (12) weeks, beginning on February 4, 2011.

23.    In or about mid-February of 2013 and after escalation within Defendants' internal management structure due to lack of performance, Chia Chen, who is a Senior Vice President of Digitas took over as the primary point of contact for Defendants on the project.  Chen told C Spire's Chief Operating Officer, Kevin Hankins, that his team had attempted to sell the advertising opportunity to other internal teams within his organization who could potentially sell advertising on behalf of C Spire to their respective clients.  However, Chen's comments to Hankins were vague on the issue of whether his team had actually attempted to sell advertising through C Spire's platform to Publicis's other clients.  Chen did not know specifically what, if any, level of effort, had actually been made by his team to achieve the sales.  Chen further speculated that C Spire's size and geographic territory had possibly contributed to their inability to sell advertising through C Spire's platform.  Nevertheless, Defendants were fully aware of the geographic location of C Spire's service territory, the nature of its business and its size when Phonevalley originally promised to deliver $500,000 in advertising revenue to C Spire and later when they agreed to use best efforts to do so.

24.    As a result of its involvement in the negotiation of the Amended Statement of Work as well as its specific undertakings in the Amended Statement of Work, and the involvement of Digitas personnel, including Chia Chen, Senior Vice President of Digitas, Digitas is independently obligated to perform the obligations undertaken by Phonevalley and later Digitas itself in the Amended Statement of Work.

25.    Digitas is also liable for the acts of Phonevalley as its successor in interest and/or because at all times pertinent hereto, Phonevalley held itself out as speaking for Digitas as its agent, and C Spire relied upon Phonevalley's representations on behalf of Digitas.

26.    Alternatively, despite the fact that Phonevalley has recently attempted to identify itself as a business unit of VNC Communications, Inc., Phonevalley is in fact an unincorporated entity which affords no protection from liability for the acts of those attempting to do or doing business in its name.  Because Digitas took over the business of Phonevalley, Digitas is liable for any and all representations made by Phonevalley employees.

27.    To date, Defendants have failed to meet their obligations under the Amended Statement of Work.  Specifically, they have failed to deliver revenue for advertising as promised.  In fact, the Defendants have failed to deliver any revenue as of the date of this Complaint.

28.    Additionally, Defendants have failed to use "best efforts" to secure such revenue as promised.  C Spire reasonably expected that by undertaking in the Amended Statement of Work to use its "best efforts" to obtain $500,000 in advertising revenue for C Spire, Defendants would at a minimum expand the scale, scope and sense of urgency in their efforts to contact and sell such advertising.  C Spire reasonably expected that best efforts by Defendants in this regard would have included a concrete effort to sell to Digitas and Publicis Groupe clients.  Moreover, as Defendants' failure to perform became obvious during Phase 3, C Spire representatives, including its Chief Operating Officer, Kevin Hankins, made requests of Defendants for such additional efforts.  The Defendants did not make the efforts requested.  For example, the Defendants have not introduced any prospective customers to C Spire.  The Defendants have not made anything other than cursory efforts to contact some of their existing clients while

telling C Spire that other clients are not a good fit for C Spire.  The Defendants have continued to fail to use best efforts despite C Spire's written and oral complaints concerning their failure to perform, all of which Defendants have ignored.  Most telling, though, of Defendants' lack of effort, let alone best efforts, is their failure to deliver any advertising revenue whatsoever.

## COUNT I
## DECLARATORY JUDGMENT

29.     Paragraphs one (1) through twenty-eight (28) are incorporated herein by reference.

30.     Pursuant to 28 U.S.C. § 2201, C Spire brings this action for a construction of the parties' rights and obligations under the Agreement and a determination of those rights as follows:

a)     That Defendants have acted in violation of the Statement of Work by virtue of its failure to perform the obligations and provide the deliverables stated in the terms of the Agreement;

b)     As a result of Defendants' breach of the Statement of Work, C Spire is not obligated to perform its obligations under the Statement of Work, which include any obligations to pay amounts due under the Statement of Work.

## COUNT II
## BREACH OF CONTRACT

31.     Paragraphs one (1) through thirty (30) are incorporated herein by reference.

31.     Plaintiff and Defendants were parties to a valid and binding contract;

33.     Defendants' conduct established an unjustifiable intention to abandon, renounce, and refuse to perform its obligations and deliverables set forth in the Statement of Work;

9

34.     C Spire was forced to change its business plans in reliance upon Defendants' repudiation and breach of the Statement of Work.

35.     Defendants' actions therefore constitute a breach of the Statement of Work.  As a direct, proximate and foreseeable result of said breach, C Spire has suffered and will continue to suffer actual damages, the amount of which to be proven at trial.

## COUNT III
## PROMISSORY ESTOPPEL

36.     Paragraphs one (1) through thirty-five (35) are incorporated herein by reference.

37.     Defendants' oral representations to C Spire that it would, in a specified time frame, deliver $500,000 in advertising revenue, and later as modified to include a qualifier that it would use best efforts to do so, constituted promise(s) upon which Defendants could foresee that C Spire would rely upon.

38.     C Spire did in fact rely on Defendants' promise(s), and as a proximate and foreseeable result of such reliance, C Spire has suffered and will continue to suffer actual damages, the amount of which to be proven at trial.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

39.     Paragraphs one (1) through thirty-eight (38) are incorporated herein by reference.

40.     Defendants' oral representations to C Spire that it would, in a specified time frame, deliver $500,000 in advertising revenue, and later as modified to include a qualifier to use best efforts to do so, constituted material misrepresentations and omissions of a fact that Defendants, in making such statements, failed to exercise the degree of diligence and expertise of a reasonably competent business in Defendants' position.

41.     C Spire reasonably relied on such misrepresentations and omissions made by Defendants to its detriment, and as a direct and proximate result of such reliance, has suffered, and will continue to suffer damages, the amount of which to be proven at trial.

## COUNT V
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

42.     Paragraphs one (1) through forty-one (41) are incorporated herein by reference.

43.     Defendants owed to C Spire duties of good faith and fair dealing in their performance and enforcement of the Statement of Work between the parties.

44.     By failing to use its best efforts to deliver $500,000 in advertising revenue as represented to C Spire and set forth in the Statement of Work, Defendants violated the standards of decency, fairness and reasonableness which were justifiably expected from them in their performance under the Statement of Work.

45.     The misrepresentations and omissions made by Defendants to C Spire, as well as the Defendants' course of performance under the Statement of Work between the parties constitute a breach of such a duty.  As a direct and proximate result of such breach, C Spire has suffered, and will continue to suffer, damages, the amount of which to be proven at trial.

## PRAYER FOR RELIEF

Accordingly, C Spire respectfully requests the following relief:

a)     A declaratory judgment that Defendants acted in violation of the terms of the Statement of Work by failing to perform the obligations and provide the deliverables stated in the terms of the Statement of Work, and that as a result of Defendants' actions, C Spire is not obligated to perform its obligations under the Statement of Work, which include its obligations to pay amounts due under the Statement of Work;

11

b)      That Defendants be held liable for their breach of contract and be ordered to compensate C Spire for the damages caused by such breach; or in the alternative, that Defendants be held liable for causing C Spire to justifiably rely upon their promise that they would, in a specified time frame, deliver $500,000 in advertising revenue;

c)      That Defendants be held liable for their negligent misrepresentations and omissions made to C Spire and be ordered to compensate C Spire for the damages caused by such negligent misrepresentations and omissions;

d)      That Defendants be held liable for their breach of the duty of good faith and fair dealing owed to C Spire and be ordered to compensate C Spire for the damages caused by such breach;

e)      That Defendants be ordered to pay to C Spire damages for the above-described actions, including but not limited to lost revenue and business opportunities sustained by C Spire as a result of the above wrongful acts and omissions;

f)      That Defendants be ordered to pay to C Spire exemplary and punitive damages for their willful, intentional and wrongful actions;

g)      That C Spire be awarded its attorneys' fees and costs;

h)      That C Spire be awarded pre-judgment interest and post-judgment interest; and

1)      That C Spire be awarded any additional relief that the Court may deem just and appropriate.

Dated this, the ___20 th___ day of May, 2013.

Respectfully submitted,

**CELLULAR SOUTH, INC.**
**dba C SPIRE WIRELESS**

By: _Charles L McBride_

OF COUNSEL:

Charles L. McBride, Jr., MSB No. 8995
Katie L. Wallace, MSB No. 101919
Lauren W. Oaks, MSB No. 103896
Brunini, Grantham, Grower & Hewes, PLLC
The Pinnacle Building, Suite 100
190 East Capitol Street
P.O. Drawer 119
Jackson, Mississippi  39205
cmcbride@brunini.com
kwallace@brunini.com
loaks@brunini.com